# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DONALD JACKSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 17-0149-WS-M |
| | ) |
| THE BOARD OF COMMISSIONERS | ) |
| OF THE HOUSING AUTHORITY OF | ) |
| THE CITY OF PRICHARD, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (doc. 26). The Motion has been briefed and is now ripe for disposition.

**I.  Background.**

   *A.  Well-Pleaded Factual Allegations.*

Plaintiff, Donald Jackson, is a former employee of defendant Housing Authority of the City of Prichard (the "Housing Authority"). In his Second Amended Complaint (doc. 25), filed by and through counsel, Jackson asserts various statutory claims alleging civil-rights violations by defendants, the Housing Authority, the Board of Commissioners of the Housing Authority (the "Board"), Reginald Crenshaw (a Board member), Felicia Snow (executive director of the Housing Authority), Charles Pharr (consultant for the Housing Authority), and Greg Harris (attorney for the Housing Authority).[1]

---

[1] Since filing his original Complaint (doc. 1) on April 12, 2017, Jackson has amended it on two occasions. First, on May 9, 2017, Jackson filed an Amended Complaint (doc. 5) as of right, prior to the filing of an answer or other responsive pleading by any defendant. Second, after defendants filed Motions to Dismiss (docs. 8-10) in response to the Amended Complaint, Jackson requested and received leave of court to amend his pleading again for the stated purpose of "plead[ing] facts that cure the facial deficiencies … identified by Defendants' motion to Dismiss." (Doc. 19, at 4.) The Second Amended Complaint (doc. 25) filed on July 7, 2017 makes wholesale changes, in terms of both substance and formatting, to its predecessor, by
(Continued)

The well-pleaded factual allegations of the Second Amended Complaint include the following: Jackson worked for the Housing Authority for nine years, predominantly as Director of Housing Management. (Doc. 25, ¶¶ 12-13.) Throughout this time, his job performance was excellent and he received various awards and recognition for his fine work. (*Id.*, ¶¶ 14-17.) In June 2014, however, Jackson was involved in a minor accident while on personal business driving a company vehicle in Biloxi, Mississippi, and was charged with DUI. (*Id.*, ¶¶ 18-19.) Jackson reported the matter to the Housing Authority's then-executive director, defendant Charles Pharr, the following day. (*Id.*, ¶ 20.) Pharr assured Jackson that his employment would not be terminated over the incident; however, Jackson received a reprimand and other discipline, including temporary loss of travel privileges and a four-week unpaid suspension. (*Id.*, ¶¶ 22-24.) Ultimately, Jackson's rights and privileges, including use of a company car, were reinstated, the criminal charges were dismissed by a court of law, and the matter was resolved. (*Id.*, ¶¶ 25, 45.)

Shortly thereafter, on or about February 4, 2015,[2] Jackson terminated the employment of a Housing Authority employee named Sherry Brookins. (*Id.*, ¶ 29.) The new executive director, defendant Felicia Snow, had directed an internal reconciliation of the Housing Authority's financial accounts. (*Id.*, ¶¶ 33, 36.) In performing that reconciliation, Jackson discovered that Brookins had stolen federal funds, and reported those findings to Snow and the Housing Authority's counsel, defendant Greg Harris. Both Snow and Harris approved and authorized the decision to terminate Brookins' employment on that basis. (*Id.*, ¶ 38.) Several years earlier, Jackson had terminated the employment of another employee named Georgette Nicholson for a similar offense. (*Id.*, ¶ 30.)

According to the well-pleaded allegations of the Second Amended Complaint, Brookins had previously been involved in an automobile accident in October 2014, when she totaled a company car by rear-ending another vehicle. (*Id.*, ¶ 32.) Jackson alleges that Brookins was "having a discreet relationship with one of the staff employers," as a result of which she was

---

deleting certain claims, modifying other claims, and significantly expanding the recitation of facts.

[2] The Second Amended Complaint fixes the date as February 4, 2014 (doc. 25, ¶ 19); however, the Court assumes that the year is a typographical error because otherwise plaintiff's time line would not make sense.

never disciplined for her car accident. (*Id.*) According to Jackson, "Brookins was in a car accident and because she was a female she was not reprimanded." (*Id.*, ¶ 41.)

The Second Amended Complaint reflects that after Jackson fired Brookins, "he was harassed retaliated against." (*Id.*, ¶ 40.) In particular, Harris, Pharr and Board member defendant Reginald Crenshaw warned Jackson that unless he re-hired Brookins "his job would be in jeopardy" and his June 2014 accident "would be revisited." (*Id.*, ¶¶ 43-44, 46.) Jackson complained to Snow that the Housing Authority was giving Brookins preferential treatment because of her gender, to which Snow responded, "They want me to fire you for firing Sherry Brookins." (*Id.*, ¶ 48.) Jackson complained to the chairman of the Board that Harris, Pharr and Crenshaw were harassing him for terminating Brookins' employment. (*Id.*, ¶¶ 49-50.) Jackson states this harassment "was in the form of long working hours" and "almost constant reminders of revisiting the accident of June 2014." (*Id.*, ¶ 51.) As to the former, Jackson's working hours were increased, he received more assignments and new deadlines, and his company car privileges were revoked. (*Id.*, ¶ 61.) As to the latter, Jackson was questioned and contacted repeatedly for information and documentation about the previously-resolved June 2014 auto accident. (*Id.*, ¶¶ 59, 60.) A short time later, Jackson was notified that the Board "intended to begin the process of removing Mr. Jackson by reopening the accident of June 2014." (*Id.*, ¶ 52.) Jackson then complained to Crenshaw, Harris and Pharr that he was being discriminated against for firing Brookins because she was female and he was male. (*Id.*, ¶ 56.)

In October 2015, a body identified only as "the OIG" investigated misappropriation of funds and discreet relationships between Brookins and a male staff member. (*Id.*, ¶ 62.) In light of this development, Crenshaw instructed Snow to discontinue adverse actions against Jackson. (*Id.*, ¶ 63.) Jackson testified in the OIG's investigation, revealing that Brookins had admitted to the theft and that he (Jackson) had been subjected to discrimination and retaliation after firing Brookins. (*Id.*, ¶ 64.) At the conclusion of its investigation, the OIG stated that no further action should be taken against Jackson for Brookins' firing or the June 2014 accident. (*Id.*, ¶ 67.) Nonetheless, defendants promptly resumed their actions against Jackson, with Jackson complaining on numerous occasions to Harris, Pharr, Snow and Crenshaw that their treatment of him was unfair, discriminatory (based on Jackson's gender) and retaliatory (based on Jackson's participation in the OIG investigation). (*Id.*)

Ultimately, Jackson was given a "letter of termination" or a "notice of termination" by the Housing Authority. (*Id.*, ¶¶ 69-70.) Plaintiff has deliberately scrubbed all reference to the date of that "notice of termination" from his Second Amended Complaint; however, the letter is dated February 12, 2016, with delivery by hand. (Doc. 26, Exh. 1.) The two-page letter, signed by defendant Felicia Snow as Executive Director, states in relevant part as follows:

> "This letter is to inform you that your employment with the Housing Authority of the City of Prichard, Alabama has been terminated, effective as of 9:00 a.m., Friday, February 12, 2016. Your employment was terminated in accordance with Section 4.1.1 of the approved Personnel Policy of the Housing Authority ….
>
> "In accordance with the Personnel Policy, you may request a hearing before the Board of Commissioners if you request such a hearing, in writing, within five (5) working days after you receive this notice of termination. Such a hearing will be held within 30 days after receipt of your request.
>
> "Upon your receipt of this notice of termination, you must immediately surrender all property of the Authority, including but not limited to keys, locks and cell phones."

(Doc. 26, Exh. 1.)[3] The February 12 letter also reflected that the termination decision had been made by reference to Personnel Policy sections relating to misuse of Authority property or vehicles, violation of departmental rules, drinking alcoholic beverages in a manner to adversely affect work performance, acts incompatible with public service, acts endangering the safety of others, and use of Authority property off the job site without proper authority. (*Id.*) Plaintiff's pleading characterizes the February 12 letter as "an immediate act of discharge with a right to appeal to the board of commissioners." (Doc. 25, ¶ 70.)

Jackson availed himself of said right to appeal, and testified at the ensuing hearing "that he was a victim of sex discrimination and retaliation." (*Id.*, ¶ 71.) After so testifying, Jackson "has interviewed at a number of jobs and have [*sic*] been denied by all." (*Id.*) On September 12,

---

[3] The date and contents of the February 12 letter of termination (a copy of which is appended to defendants' Motion to Dismiss) are properly considered for purposes of this Rule 12(b)(6) analysis, notwithstanding plaintiff's efforts to evade them in pleading his Second Amended Complaint. This is because the February 12 letter is central to Jackson's claims and its authenticity is unchallenged. *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," in the sense that "the authenticity of the document is not challenged"); *see also Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (similar).

2016, the Housing Authority sent Jackson a letter, signed by defendant Crenshaw as chairman of the Board, stating as follows:

> "This letter is to inform you of the decision of the Board of Commissioners concerning the appeal of your termination of employment with the Housing Authority of the City of Prichard.
>
> "After consideration of all the evidence, it is the decision of the board that the termination of your employment is due to be, and is upheld."

(Doc. 25, Exh. 1.) Jackson completed a U.S. Equal Employment Opportunity Commission Intake Questionnaire on February 23, 2017. (Doc. 25, Exh. 2.)[4] In that Questionnaire, Jackson alleged that the Housing Authority had discriminated against him on the basis of sex (because he was disciplined for having an accident in a company car, whereas Sherry Brookins was not) and retaliation (because he was fired for recommending termination of Brookins for stealing federal funds in 2014).

### B.   *Jackson's Claims for Relief.*

On the strength of these factual allegations, Jackson presents four enumerated causes of action against defendants in the Second Amended Complaint. Count I is labeled a Title VII claim, with Jackson alleging that the Housing Authority and the Board "violated Title VII base [*sic*] on sex discrimination, harassing plaintiff and creating a hostile environment and retaliating against plaintiff." (Doc. 25, ¶ 77.) The pleading elaborates that these defendants discriminated against Jackson by "treating him differently than Ms. Brookins," "revisiting the accident almost every day after they found out about Ms. Brookins' termination," and "creating harsh working conditions" for him. (*Id.*, ¶¶ 78-81.) According to the Second Amended Complaint, defendants "retaliated against him for complaining about sex discrimination harassment and terminate his employment." (*Id.*, ¶ 82.) Plaintiff alleges that he engaged in protected activity "when he opposed the board [*sic*] discriminatory practice of termination" and "spoke to OIG officials during its investigation." (*Id.*, ¶ 83.) Count I also includes Title VII claims against the individual defendants for hostile work environment on the ground that they were "[a]cting under

---

[4]   Not only is Jackson's signature on the Questionnaire dated February 23, 2017, but the multipage document is repeatedly stamped "RECEIVED" by the EEOC Mobile Local Office on February 23, 2017. (*Id.*)

color of state law" by increasing his workload, threatening to fire him if he did not rescind Brookins' termination, and taking away his company car. (*Id.*, ¶ 83(f).)

Count II is couched in terms of a "violation of First Amendment Rights." Plaintiff alleges that "Defendants discriminated against Plaintiffs [*sic*] under the First Amendment of the Constitution by terminating Plaintiff with regards to speaking with OIG about Title VII violation. Plaintiff's First Amendment Rights of protected free speech and expression were violated." (*Id.*, ¶ 87.)

Count III of the Second Amended Complaint is identified as a claim for "Violation of Fourteenth Amendment Rights," pursuant to 42 U.S.C. § 1983. Plaintiff explains that this claim proceeds on a theory of denial of due process and equal protection via defendants' alleged actions of retaliating against him for firing Brookins, engaging in sex discrimination and harassment against him for firing Brookins, and terminating his employment for speaking about Title VII violations with the OIG. (*Id.*, ¶ 89.) It appears that Jackson is limiting Count III to the Board, and is not asserting it against the other defendants. (*Id.*, ¶ 91.)

Finally, Count IV is styled "Section 1983," with a subheading of "Violation of First Amendment," and purports to be asserted against all defendants. Count IV specifically alleges that Jackson had numerous conversations with the individual defendants in which he "would openly express speech that spoke to the unfairness and discrimination displayed against him," and in which he would "complain[] about administrative unfair treatment and discrimination and harassment he was receiving." (*Id.*, ¶¶ 93-94.) Plaintiff maintains that such conduct "fell within the first [*sic*] Amendment protection and involved a matter of public concern," and that such "protected conduct was a substantial factor" in defendants' decision to fire him. (*Id.*, ¶¶ 95-96.)

## II. Analysis.

### A. *Legal Standard.*

Defendants' Motion posits that the Second Amended Complaint fails to state claims upon which relief can be granted, and therefore is properly analyzed under Rule 12(b)(6), Fed.R.Civ.P. To withstand Rule 12(b)(6) scrutiny and comply with the minimum pleading requirements of Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ][his] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, ... but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

For purposes of this analysis, the Court accepts as true all well–pleaded factual allegations of the Second Amended Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (on Rule 12(b)(6) review, "[w]e construe the second amended complaint in the light most favorable to [plaintiffs], accepting all well-pleaded facts that are alleged therein to be true"); *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[ ] the facts alleged in the complaint as true," "draw[ ] all reasonable inferences in the plaintiff's favor," and "limit[ ] our review to the four corners of the complaint"). Notwithstanding this deference to plaintiff's pleading at the Rule 12(b)(6) stage, it is also true that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

### B. *Title VII Cause of Action.*

As noted, Count I of the Second Amended Complaint is a Title VII claim rooted in allegations that defendants engaged in sex discrimination, harassment, and retaliation against Jackson. Defendants move for dismissal of Count I on timeliness grounds.[5]

---

[5] As a separate ground for their Motion to Dismiss, defendants argue that the Title VII claims against the individual defendants fail to state a claim because individual-capacity
(Continued)

It is black-letter law that a plaintiff may not sue under Title VII without first exhausting administrative remedies by filing a timely charge of discrimination with the appropriate agency, which is the EEOC in this case. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies" by "filing a timely charge of discrimination with the EEOC"); *Shi v. Montgomery*, 679 Fed.Appx. 828, 831 (11th Cir. Feb. 10, 2017) ("For starters, a person seeking to file a Title VII lawsuit must first file a timely charge with the EEOC alleging a Title VII violation and exhaust all remedies provided by the EEOC."). "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." *King v. ST Aerospace Mobile, Inc.*, 2013 WL 2635926, *6 (S.D. Ala. June 11, 2013) (citations omitted); *see also Shi*, 679 Fed.Appx. at 831 ("Alabama is a non-deferral state. … For a charge to be timely in non-deferral states, it must be filed within 180 days of the last discriminatory act."). If the plaintiff does not file a timely charge with the EEOC, claims for acts occurring outside of that 180-day period are barred. *See, e.g., Ledbetter v. Goodyear Tire and Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005) ("only those practices that occurred within 180 days of the operative EEOC charge can form the basis for Title VII liability") (internal marks omitted).

Jackson's U.S. Equal Employment Opportunity Commission Intake Questionnaire was stamped "RECEIVED" on February 23, 2017. If the date of his termination is properly viewed as September 12, 2016, as Jackson alleges, then his EEOC charge may satisfy the 180-day filing

---

relief is unavailable under Title VII, as a matter of law. Defendants are correct. *See, e.g., Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008) ("[t]he relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act") (citations omitted); *Shi v. Montgomery*, 679 Fed.Appx. 828, 831 (11th Cir. Feb. 10, 2017) ("because Title VII does not provide relief against individual employees, summary judgment was properly granted on the Title VII claims against Wims and Montgomery in their individual capacities"); *Hopkins v. JPMorgan Chase and Co.*, 620 Fed.Appx. 880 (11th Cir. Oct. 2, 2015) ("the district court correctly determined that Hopkins's claims against Enz and Logsdon failed to state a claim … because employers, not individual employees, are liable for violations of Title VII"). Accordingly, Count I of the Second Amended Complaint (which is plaintiff's Title VII cause of action) is properly **dismissed** as to defendants Crenshaw, Snow, Pharr and Harris because individual employees are not subject to liability under Title VII. Plaintiff has conceded as much. (Doc. 31, at 8 ("Plaintiff agree [*sic*] that the Title VII claims against Defendants in their individual capacity is [*sic*] due to be dismiss [*sic*].").)

deadline. If, however, the date of his termination is properly viewed as February 12, 2016, as defendants allege, then Jackson's EEOC charge is untimely on its face and his Title VII claim presented as Count I of the Second Amended Complaint fails to state a claim upon which relief can be granted.

It is well-settled that the 180-day period for filing an EEOC charge begins running when the employee receives unequivocal notice of the adverse decision, in this case the Housing Authority's termination of Jackson's employment. *See, e.g., Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000) ("[q]uite simply, the 180-day charge filing period does not run until the plaintiff is told that she is actually being terminated"); *Shi*, 679 Fed.Appx. at 831 ("The applicable period for filing an EEOC charge of discrimination does not begin to run until the employee receives unequivocal notice of an adverse employment decision."); *Wen Liu v. University of Miami School of Medicine*, -- Fed.Appx. ----, 2017 WL 2210867, *3 (11th Cir. May 19, 2017) ("Liu received a letter … on October 7, 2011, that gave written, unequivocal notice that Liu's employment was terminated …. Thus, the applicable period for filing an EEOC charge began to run on October 7, 2011.").[6] Internal appeals or collateral review of an adverse employment decision do not toll the period for filing an EEOC charge. *See Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) ("we have already held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. … The existence of careful procedures to assure fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made.") (citation omitted).[7]

---

[6] Last year, the Supreme Court reaffirmed that in the Title VII context where the adverse employment action is discharge, "[t]he claim accrues when the employee is fired. At that point – and not before – he has a 'complete and present cause of action.' So at that point – and not before – the limitations period begins to run." *Green v. Brennan*, --- U.S. ----, 136 S.Ct. 1769, 1777, 195 L.Ed.2d 44 (2016).

[7] *See also Stafford v. Muscogee County Bd. of Educ.*, 688 F.2d 1383, 1388 (11th Cir. 1982) ("The Supreme Court has squarely rejected the argument that Title VII time limitations should be tolled during the pendency of contractual grievance proceedings. … Thus, Stafford's claim that his resort to the grievance procedure established by the Board would delay the running of the limitations period is clearly foreclosed."); *Williams v. Gwinnett County Public Schools*, 425 Fed.Appx. 787, 790 (11th Cir. Apr. 25, 2011) ("collateral review of an employment (Continued)

Under any reasonable application of these well-settled legal principles to the facts alleged in Jackson's Second Amended Complaint (including the February 12, 2016 letter that is central to his claims and whose authenticity is unchallenged),[8] the 180-day period for filing an EEOC charge commenced running on February 12, 2016. On that date, the Housing Authority notified Jackson in writing "that [his] employment with the Housing Authority **has been terminated**, effective as of 9:00 a.m., Friday, February 12, 2016. … Your employment **was terminated** ...." (Doc. 26, Exh. 1 (emphasis added).) The February 12 letter constitutes unequivocal notice to Jackson that the Housing Authority had terminated his employment. Jackson did not even arguably file an EEOC charge until February 23, 2017, more than a year later and well outside the 180-day period prescribed by law for a non-deferral state such as Alabama. Therefore, Count I (Title VII) is untimely and is properly dismissed on that basis.

In arguing otherwise, Jackson insists that he "was not aware of the reason for the letter of termination" and that such letter did not "unequivocally lead plaintiff to believe it was final." (Doc. 31, at 5.) As to the first point, the February 12 letter identifies no fewer than a half dozen Personnel Policies animating that decision, including misuse of Authority vehicles, consuming alcoholic beverages in a manner to adversely affect work performance, acts endangering the

---

decision[] does not toll the running of the limitations period[]" under Title VII) (citation omitted); *Jordan v. City of Montgomery*, 283 Fed.Appx. 766, 768 (11th Cir. June 26, 2008) ("An employee's pursuit of an internal appeal, or some other method of collateral review of an employment decision, does not toll the running of the limitations period[].") (citation and internal quotation marks omitted); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 723 (7th Cir. 2004) ("[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination") (citation omitted); *Ramirez v. City of San Antonio*, 312 F.3d 178, 184 n.6 (5th Cir. 2002) ("An employer's promise to review – and potentially rectify – an earlier employment decision does not toll the limitations period."); *Morse v. University of Vermont*, 973 F.2d 122, 125 (2nd Cir. 1992) ("The fact that UVM … undertook an internal administrative review of its allegedly discriminatory decision has no effect on when the statute of limitations period begins to run."); *Mezu v. Morgan State University*, 367 Fed.Appx. 385, 388 (4th Cir. Feb. 19, 2010) ("The time the initial employment decision was made and communicated triggered the commencement of the limitations period despite the pendency of the internal appeal and the possibility of a reversal of the initial decision.").

[8]     Notably, in briefing the Motion to Dismiss, Jackson advances no argument that consideration of the February 12 letter on Rule 12(b)(6) review would be improper or otherwise unwarranted under applicable law.

safety of others, and use of Authority property off the job site without proper authority. Given the contents of that letter and the factual history set forth in the Second Amended Complaint (particularly as it relates to ongoing discussions by defendants about his automobile accident), it is disingenuous for Jackson to assert that he had no inkling what the Housing Authority's proffered reasons for firing him might be.[9] Jackson's second argument – that the February 12 letter was not unequivocal – fares no better. It is frankly difficult to imagine a more unequivocal notice of firing than the one he received, which stated (i) his employment had already been terminated at 9:00 a.m. that day, and (ii) he "must <u>immediately</u> surrender all property of the Authority." (Doc. 26, Exh. 1.) Given the clear statements set forth in the February 12 letter, the Court rejects as devoid of any factual basis plaintiff's attempts to characterize such letter as merely giving him "reason to suspect that she [*sic*] might be terminated" at some future time. (Doc. 31, at 6.)

The crux of Jackson's timeliness argument is his insistence "that he only received sufficient notice of the facts necessary to file his case on September 12, 2016 upon receipt of final notice of termination." (Doc 31, at 7.) The September 12 letter cannot rationally be read as a "final notice of termination." It says nothing more and nothing less that "it is the decision of the board that the termination of your employment is due to be, and is upheld." (Doc. 25, Exh. 1.) The Board's decision not to undo Jackson's firing is neither an act of termination itself nor a separate act of discrimination. What's more, nothing in the barebones September 12 letter offered any insights into the reasons for the Housing Authority's termination decision. As such, Jackson's insistence that he "was not aware that his termination was due to any discrimination" until receipt of the September 12 letter (doc. 31, at 7) lacks any plausible factual basis because the Second Amended Complaint identifies no new facts – and the September 12 letter contained no new facts – that conceivably could have furnished such notice of purportedly discriminatory intent to him for the first time on September 12. Whatever "notice" Jackson says he was given

---

[9] Plaintiff's argument on this point is that the February 12 letter gave him no reason to believe that he was being terminated "for an infraction that occurred two years earlier" (doc. 31, at 6), meaning the car accident / DUI in Biloxi. Under any fair reading of the February 12 letter, coupled with the facts alleged in the Second Amended Complaint, Jackson was squarely placed on notice that the car accident / DUI was the stated basis for the termination decision.

of alleged discrimination did not happen on September 12, so that date cannot plausibly be the starting point of the 180-day period for filing an EEOC charge.

For all of the foregoing reasons, the Court agrees with defendants that Count I of the Second Amended Complaint is, on its face, time-barred. Jackson received unequivocal notice of defendants' termination decision on February 12, 2016, yet he did not file an EEOC charge until more than one year later. Moreover, to the extent Jackson is attempting to invoke equitable tolling based on the well-worn proposition that "the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights," *Villareal v. R.J. Reynolds Tobacco Company*, 839 F.3d 958, 972 (11th Cir. 2016) (citation omitted), that argument fails because (i) the facts pleaded in the Second Amended Complaint reveal that Jackson was or reasonably should have been well aware of the facts supporting his Title VII claims as of February 12, 2016; and (ii) he has failed to identify any new facts learned on September 12, 2016 (the date he identifies as the proper time to commence the running of the 180-day period) that might have made the factual predicate of his Title VII claim any more apparent to him. Accordingly, the Motion to Dismiss is **granted** as to Count I, and that cause of action will be **dismissed**.

### C. The Purported "Section 1981 Claims."

Next, defendants maintain that Jackson's "claims under Section 1981 are due to be dismissed" because that section relates only to race discrimination, whereas Jackson's discrimination claims sound exclusively in sex discrimination. (Doc. 26, at 11-13.) It is correct that the Second Amended Complaint alleges sex discrimination, not race discrimination. It is also correct that 42 U.S.C. § 1981 has been construed not to reach claims of sex discrimination. *See, e.g., Givens v. Chambers*, 548 F. Supp.2d 1259, 1268-69 (M.D. Ala. 2008) ("Plaintiffs seek redress for sexual discrimination and sexual harassment under § 1981 …, but these claims fail because § 1981 provides rights and remedies only with respect to racial discrimination.").[10]

---

[10] *See also Anderson v. Dunbar Armored, Inc.*, 678 F. Supp.2d 1280, 1316 n.23 (N.D. Ga. 2009) ("To the extent that Ms. Anderson seeks to recover for a hostile work environment based on gender and pregnancy discrimination under § 1981, Defendants are entitled to summary judgment on this claim as § 1981 only applies to harassment claims based on race.").

Nonetheless, this aspect of the Motion to Dismiss is perplexing.  Careful review of the Second Amended Complaint does not reveal that Jackson is asserting any claims pursuant to 42 U.S.C. § 1981.  Indeed, that statute is cited nowhere in his pleading.  To be sure, the Second Amended Complaint does repeatedly cite 42 U.S.C. § 1981a.  But that section is not part of the Civil Rights Act of 1866.  Citing § 1981a is not tantamount to pleading a § 1981 cause of action; rather, § 1981a merely delineates certain damages remedies and procedures for Title VII and certain other statutory claims.  *See, e.g., Wilson v. U.S. Dep't of Transp.*, 759 F. Supp.2d 55 (D.D.C. 2011) ("Section 1981a addresses remedies and procedures in Title VII actions. … It does not provide any independent cause of action for which suit can be brought."); *Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp.2d 815, 839 (E.D. Tex. 2004) ("The Civil Rights Act of 1991, 42 U.S.C. § 1981a, provides a prevailing plaintiff in an intentional employment discrimination case the ability to recover compensatory and punitive damages …. This statute does not create a new substantive right or an independent cause of action ….") (citations omitted).

Thus, defendants' premise that Jackson is bringing a § 1981 cause of action against them for sex discrimination is not supported by the text of the Second Amended Complaint.  To the extent that defendants seek dismissal of § 1981 claims that Jackson has not asserted and that are nowhere stated on the face of the operative pleading, the Motion to Dismiss is **denied**.

### D. *Section 1983 Causes of Action.*

Defendants also move for dismissal of the Section 1983 causes of action set forth in Counts II, III and IV of the Second Amended Complaint.  Defendants' sole challenge to these causes of action pursuant to Rule 12(b)(6) is that plaintiff's pleading flunks the *Twombly / Iqbal* plausibility standard.  To recap, what is required for a federal pleading to withstand a motion to dismiss for failure to state a claim is that the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Miyahira*, 715 F.3d at 1265 (citations and internal quotation marks omitted).  "The plausibility standard calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the defendant's liability." *Id.* (citation and internal quotation marks omitted).  Defendants articulate specific plausibility objections to each of Jackson's § 1983 claims.

With respect to Jackson's § 1983 claims predicated on equal protection / due process violations, defendants insist that the plausibility standard is not satisfied because the Second

Amended Complaint lacks "specific allegations of similarly situated individuals who were treated differently than the plaintiff." (Doc. 26, at 14 (citation and emphasis omitted).) As a threshold matter, it is not certain that this legal proposition – for which defendants cite a single unpublished district court opinion from another jurisdiction – holds in the Eleventh Circuit.[11] Besides, the Second Amended Complaint does identify a purportedly similarly situated individual who was treated differently than Jackson, to-wit: Sherry Brookins. Defendants suggest that Brookins is not a suitable comparator because "it is undisputed that her employment was also terminated." (Doc. 26, at 15.) This contention misses the point. The Second Amended Complaint clearly and unambiguously alleges that defendants treated Jackson differently from Brookins on the basis of gender because (i) Jackson was reprimanded and fired for having a "minor accident" in a Housing Authority vehicle; (ii) Brookins was neither reprimanded nor fired for having a "motor vehicle accident in which she totaled the company's car while running into the back of a vehicle" just a few months later; and (iii) Brookins was treated differently because she is female. That Brookins' employment was terminated some time later at Jackson's behest for reasons completely unrelated to her automobile accident does not logically negate the plausibility of Jackson's specific equal protection claim (*i.e.*, disparate discipline for company car accidents based on gender).

As to Jackson's § 1983 claims asserting First Amendment violations, defendants balk that the Second Amended Complaint "does not explain how the Defendants acted under color of law to deprive him of his First Amendment Rights." (Doc. 26, at 15.) This contention does not withstand scrutiny. Jackson's pleading alleges that the Housing Authority is a "municipal

---

[11] To be sure, the Eleventh Circuit has required that comparators be identified in the pleading in cases involving class-of-one equal protection claims. *See, e.g., Tims v. Golden*, 2016 WL 4259118, *4 (S.D. Ala. Aug. 10, 2016) ("In a class-of-one case, … a complaint must identify sufficient facts about a comparator to determine whether the comparator is similarly situated.") (citations omitted). But Jackson's equal protection claim does not proceed on a class-of-one theory; rather, his is a garden-variety equal protection claim alleging discrimination based on his status in a protected class (male). *See generally Griffin Industries, Inc.v . Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007) (contrasting "the normal equal protection case" in which a plaintiff claims "it was discriminated against because it belongs to a protected class such as race or gender" with a class-of-one equal protection claim). Defendants identify no authority for the proposition that similarly situated comparators must be specifically pleaded in the complaint for normal equal protection claims, as opposed to class-of-one claims.

organization" that "exists pursuant to the laws of the State of Alabama and is acting under the color of state law." (Doc. 25, ¶ 5.)[12] It further alleges that he engaged in protected free speech by having discussions with the OIG about Title VII violations and by voicing complaints to defendants Harris, Pharr, Snow and Crenshaw about unfair, discriminatory and retaliatory actions taken against him. (*Id.*, ¶¶ 87, 93-95.) And it alleges that the defendants (a public body, as well as the Board, board members, executive director and counsel of such public body) fired Jackson for engaging in such protected speech. In light of these well-pleaded allegations, defendants' bare conclusory assertion that the Second Amended Complaint "does not explain how the Defendants acted under color of law to deprive him of his First Amendment Rights" is unavailing.

Finally, defendants attack Jackson's First Amendment claims by positing that the Housing Authority's Personnel Policy "did *not* create a binding contract" and that "his allegations are conclusory at best." (Doc. 26, at 15.) As to the former point, defendants do not explain how the purportedly at-will nature of the Housing Authority's Personnel Policy confers license on defendants to fire an employee for engaging in protected speech under the First Amendment. Jackson does not bring a breach of contract claim against defendants; therefore, defendants' assertion that there was no binding contract has no apparent bearing on the plausibility *vel non* of his § 1983 claims for *Twombly* / *Iqbal* purposes. As to the latter point, the Second Amended Complaint offers substantial detail as to the nature and content of Jackson's purportedly protected speech and links such speech to his dismissal. The Court is left to guess why defendants brand such detailed allegations "conclusory at best." While Jackson has not pleaded his § 1983 claims in the clearest possible manner, that is not the test for Rule 12(b)(6) purposes. *See, e.g., Brown v. Endo Pharmaceuticals, Inc.*, 38 F. Supp.3d 1312, 1323 (S.D. Ala. 2014) ("For better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.") (citation omitted). Defendants have made no showing either that Jackson's § 1983 claims flunk the

---

[12] As a matter of Alabama statute, a housing authority "shall constitute a public body and a body corporate and politic exercising public powers, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this article." Ala. Code § 24-1-27(a).

plausibility standard, or that a more definite statement is required under Rule 12(e), Fed.R.Civ.P.[13]

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Defendants' Motion to Dismiss (doc. 26) is **granted in part**, and **denied in part**;

2. The Motion to Dismiss is **granted** as to Count I (Title VII), which is **dismissed** for failure to state a claim upon which relief can be granted;

3. In all other respects, the Motion to Dismiss is **denied**; and

4. Defendants' answer must be filed on or before **September 1, 2017**.

DONE and ORDERED this 21st day of August, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[13] As a throw-in at the end of their principal brief, defendants maintain that if Rule 12(b)(6) dismissal of Jackson's § 1983 claims is not granted, then the Court should "require Plaintiff to plead them with particularity pursuant to Rule 12(e)." (Doc. 26, at 16.) Defendants do not elaborate on this aspect of their Motion or address the applicable legal standard for relief. Rule 12(e) does not impose a particularity requirement for civil pleadings. As a matter of well-settled law, Rule 12(e) authorizes a defendant to move for a more definite statement only if a pleading to which response is allowed "is so vague or ambiguous that the party cannot reasonably prepare a response." Rule 12(e), Fed.R.Civ.P. This standard erects a high bar, indicative of the disfavored status of the Rule 12(e) remedy. *See, e.g., Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp.2d 1218, 1221-22 (S.D. Ala. 2005) (motions for more definite statement "are viewed with disfavor and are rarely granted," and are "not a substitute for discovery"); *Austin v. Auto Owners Ins. Co.*, 2012 WL 3101693, *5 (S.D. Ala. July 30, 2012) ("Under clearly established law, motions for more definite statement are disfavored and are confined to such narrow circumstances as 'shotgun pleadings' or unintelligible pleadings, not pleadings that are merely less detailed than a defendant might like.") (collecting cases). Under settled law, "[a] motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Fathom*, 352 F. Supp.2d at 1221 (citation omitted). Whatever its faults, the Second Amended Complaint is not so unintelligible that defendants are unable to respond in good faith or without prejudice to themselves. Thus, defendants' request for more definite statement pursuant to Rule 12(e) is **denied**.